IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DAVE MOLONY and GOLD LEAF
INVESTMENTS, INC.,

           Plaintiffs,

     v.

CROOK COUNTY, a political subdivision
of the State of Oregon,

           Defendant.

No. CV 05-1467-MO

OPINION AND ORDER

**MOSMAN, J.,**

    Plaintiff Dave Molony and his company, Gold Leaf Investments, (hereafter "Molony") sued Crook County for inverse condemnation, state and federal equal protection violation, state and federal due process violation, § 1983 civil rights violation, and declaratory and injunctive relief.[1] His core complaint was that Crook County refused to recognize the validity of a road that provided access to Molony's subdivision properties, which then prevented him from moving forward with his development. By the time he was able to do so, after vindicating his position in state court, a shift of Brobdingnagian proportions had taken place in property values, and he wanted Crook County to pay the difference, among other damages. Following a four day trial in May 2009, Molony prevailed, to the tune of $1,001,000. Now he seeks his attorney fees, in the

---

[1] The court dismissed plaintiff's declaratory judgment claim as moot pre-trial, and directed a verdict against plaintiff on the substantive due process claim.

PAGE 1 - OPINION AND ORDER

amount of $616,189.20[2], and related nontaxable expenses of $7461.93. He also seeks costs of $14,102.24. Because (1) some of the fees followed a setover of the trial that was solely attributable to plaintiff, at a time when plaintiff said he was ready to go to trial; (2) some of the fees were incurred in the related state court case for which fees in this action are not available; and (3) some of the remaining fees are simply excessive or inadequately supported, I grant in part and deny in part the request for fees, and award plaintiff $335,147.18 in fees, $7461.93 in nontaxable expenses, and $14,102.24 in costs.

## DISCUSSION

**I.     The Lodestar Standard for Recovery of Attorney Fees**

The baseline method for determining a reasonable fee under federal fee shifting statutes such as the one relevant here, 42 U.S.C. § 1988(b), is to determine the hours reasonably worked and multiply that by a reasonable hourly rate. *See, e.g.*, *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 563-64 (1986). Under plaintiff's calculations, this lodestar method results in 2280.95 hours worked by nine attorneys, four paralegals, and one land use planner at rates ranging from $90 to $440 an hour. (Pls.' Mot. for Att'y Fees (#220) 3-5, 7.)

**A.     *The Reasonableness of the Hourly Rates***

Mr. Willis, on behalf of himself and his partners, urges a billing rate at the 95th percentile of billing rates in the 2007 Oregon State Bar Survey, as adjusted for inflation. He claims the rates are justified because, as he contends, their work was excellent, and also because their particular practice area is inadequately represented in the survey. The affidavit of plaintiff's fee expert, Mr.

---

[2] Plaintiff originally sought fees of $617,389.20 for 2286.95 hours in both this case and the state court matter (Pls.' Mot. for Att'y Fees (#220) 2-5, 7), but subsequently acknowledged an error that resulted in six hours, or $1200, of excess billing (Pls.' Reply (#244) 1-2).

PAGE 2 - OPINION AND ORDER

Markowitz, makes a similar point about the weaknesses of the OSB survey, and additionally supports Mr. Willis's rate. (Markowitz Decl. (#224) 4-6.)

Defendant's principal response is a late-filed affidavit from Gregory Lynch, who seems to suggest that the going rate in Bend, Oregon, is lower than Mr. Willis's rate in this case. (Lynch Decl. (#241) 3.) While Mr. Willis, at least, seems to have his main office in Bend, he also keeps an office in his firm's home office in Portland. In addition, the case was tried in Portland, not Bend. Portland billing rates have, on occasion, been used to reduce the fees of out-of-state lawyers who come here to try cases. It seems that same principle of locality adjustment should cut both ways.

I express no opinion as to whether the performance of all plaintiff's lawyers in this case merits placement at the 95th percentile. But on this record, in light of the essentially unrebutted affidavit of Mr. Markowitz and the other factual assertions made by plaintiff's counsel, I accept the reasonableness of the rates utilized in plaintiff's calculations.

    **B.**    *The Reasonableness of the Hours Worked*

Before dealing with the general reasonableness of the hours worked, there are two discrete categories of billing that I find should not be shifted to defendant: the time between the first and second trial setting, and the fees associated with the *Cabler* litigation in state court.

    **1.**    **The Setover and Its Consequences**

This court held a pretrial conference on October 30, 2008. (Mins. (#121).) At that time, it became clear that plaintiff's legal team had not met its clear obligations with respect to expert witnesses. Plaintiff's lawyers made clear that they were prepared to try the case on the date in place at that time—November 8, 2008. By the close of the pretrial conference, we had dealt with

evidentiary issues, witness objections, jury instructions, and trial management. Other than the problem with expert witnesses, the only thing that remained was to try the case. And defendant's counsel also made clear that he would much prefer to try the case November 8, but felt hamstrung in his ability to do so because of plaintiff's failure to adequately disclose expert reports and opinions. Unfortunately, however, the nondisclosure of expert materials had only one adequate solution: setover of the trial from November 18, 2008 to May 26, 2009. (Order (#120, 123).)

Despite this history, plaintiff seeks reimbursement for an extraordinary amount of time spent preparing for the second trial date. In fact, separate from the time spent actually trying the case in May 2009, plaintiff seeks $156,956.90[3] in fees for the time between the two trial dates. Apparently Parkinson's law that work expands to fill the time available for its completion is alive and well in litigation. In any event, except for plaintiff's error, the parties were prepared to try the case in November 2008. Even if plaintiff's legal team came up with all sorts of brilliant new ideas for how to try the case, those are not expenses that should be borne by Crook County. It came to the pretrial conference prepared to try the case; plaintiff's missteps should not result in a

---

[3] To calculate this number, I used plaintiff's Motion for Attorney Fees (#220), as well as Exhibits B and C (Willis Decl. (#221) Ex. B, C). Following the court's October 31, 2008 order delaying the start of trial, counsel billed 38.3 hours between November 3, 2008 and December 23, 2008. (Willis Decl. (#221) Ex. B at 51-54.) Next, I calculated a simple (not weighted) average billing rate for each attorney or paralegal who billed on those dates. For example, Mr. Miller's average rate in 2008 was $215.89 per hour. (*See* Willis Decl. (#221) Ex. B at 55.) I multiplied each attorney's billed hours by his or her average rate to find $9029.67 in fees for the relevant time period in 2008. I used the same methodology to subtract out the cost of trial ($35,887.10 for 145.9 hours, *see* Willis Decl. (#221) Ex. C at 20-22, excluding the six double-billed hours) and any post-trial billing ($8559.37 for 27.1 hours, *see* Willis Decl. (#221) Ex. C at 22-23) from the total fees already billed for 2009 at page five of plaintiff's Motion for Attorney Fees ($192,373.70 for 780.41 hours). This results in unnecessary fees of $147,927.23, from January 1, 2009 until trial. The combined total from 2008 and 2009 is $156,956.90.

PAGE 4 - OPINION AND ORDER

whopping increase in the fees the county must pay. For this reason, I decline to award the $156,956.90 in interregnum fees.

### 2.    The *Cabler* Litigation

Prior to filing this lawsuit, plaintiff sued in Crook County in what is now called the *Cabler* lawsuit. In that lawsuit, plaintiff sought a declaratory judgment concerning rights related to an easement for a public road, regarding the same property at issue in this case. It is true, as plaintiff now argues, that his successful resolution of the *Cabler* lawsuit was critical to his success in this lawsuit. Nevertheless, I consider it a limb I am unwilling to go out on as far as plaintiff would like to use this lawsuit as a vehicle for awarding fees for an entirely separate lawsuit in state court. For this reason, I decline to award the $64,941.50 for 217.7 hours associated with the *Cabler* lawsuit. (Pls.' Mot. for Att'y Fees (#220) 7.)

### 3.    The Reasonableness of the Remaining Request

There remains the analysis of the overall reasonableness of the remaining $394,290.80 and 1417.54 hours of plaintiff's request. On this subject, a preliminary point is in order. Plaintiff asserts with some passion that "the result is what matters." (Pls.' Mot. for Att'y Fees (#220) 11; Pls.' Reply (#244) 2 (both citing *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983)).) Plaintiff's theory seems to be that if you win big, you should get all the fees in your request. But as *Hensley* and the other cases make clear, there is still the underlying concept of reasonableness, even for parties with excellent results. *See Hensley*, 461 U.S. at 435 ("Normally this will encompass all hours *reasonably expended* on the litigation") (emphasis added). A winning party is not, by the mere fact of winning alone, entitled to whatever amount it chooses, or even incurred, in its effort. It may sometimes be true, as in this case, that the effort spent in victory was substantially

PAGE 5 - OPINION AND ORDER

overdone.

Plaintiff's position also presupposes that an excellent result is invariably attributable to excellent lawyering, and should be correspondingly rewarded. But this is manifestly not always the case. When two mediocre lawyers try a case, a mediocre lawyer will win it, and might even win big.

It is true that in fee litigation, the result matters. And it is unquestionably the case that the result here was excellent. But I am still obligated to determine the underlying reasonableness of the time expended. So while plaintiff's lawyers are to be congratulated, I decline their invitation to make up for any reductions in their fee request with an enhancement on the remaining balance, because my own view of the trial is that excellent results could have been obtained with significantly less expense.

Four examples will suffice. Plaintiff seeks about 228 hours responding to defendant's motion for summary judgment, 155 hours spent on jury instructions, 50 hours preparing and revising expert reports, and 51 hours on the pretrial order. (Def.'s Resp. (#235) 18, 21-23.)  There is no question that each of these tasks takes some time. But it is difficult to understand why the jury instructions in this case, for example, would require 155 hours of work. Independent of the model instructions, the instructions actually used at trial total eight pages. I recognize that the court made special requests of counsel during trial with regard to jury instructions, and that plaintiff's counsel followed through on that request where defense counsel did not. But the number still seems extraordinarily large. This court has broad experience with drafting jury instructions, including, quite often, the preparation of original instructions. In no case would the task even remotely require 155 hours.

PAGE 6 - OPINION AND ORDER

I recognize that the total award sought has already been cut by fifty hours for the work on jury instructions in the interregnum. Even so, counsel spent more than 100 hours on jury instructions prior to the setback, a number nearly double the time likely required based on the prevalence of model instructions.

The same is true of the other tasks mentioned. It is true that some serious work was necessary to respond to defendant's motion for summary judgment, and that the motion itself was not a model of clarity. It is also true that the issue was important, and that success at summary judgment was important to the ultimate success at trial. But it is difficult to imagine why the task would take the better part of five and a half weeks of solid work. If one took a full week to write the memorandum in opposition, and another full week producing the supporting exhibits, and another half week editing the results, one would still not have arrived at the halfway mark for what was done here.

Without belaboring the point, the same could be said of the fifty-one hours spent on the Pretrial Order and the fifty hours spent editing expert witness statements. As to the latter, I reject the argument made by the defense that it is somehow illegitimate to spend any time refining expert witness statements. But there is a germ of truth in defendant's complaint: these are supposed to be the original work of the experts, who do not serve as mere mouthpieces for counsel. With that in mind, fifty hours starts to sound like the work of an author, not a copy editor.

Meanwhile, a related problem is interlaced throughout the billing. It is in the nature of things that when many people work on the same task, the amount of work multiplies. There is a degree to which such overlapping work is acceptable; many cases are benefitted by having at

PAGE 7 - OPINION AND ORDER

least two lawyers assigned to it. Here, for example, it can be seen that the departure of one lawyer after the *Cabler* litigation demonstrated the wisdom of having two lawyers on the case, so that one remained with knowledge of the case. But it is ineluctably the case that when nine lawyers play some role in litigation, nobody is getting nine times the amount of work that would be done by one lawyer. For instance, defendant specifically references more than 118 hours of duplicative work involving two or three attorneys at a time, not including trial, where plaintiff's counsel could likely have reduced the expended time by at least half. (Def.'s Resp. (#235) 12-16.)

At this point, a trend begins to form, shaping the remaining 1417.54 hours of plaintiff's request. In at least four specific instances representing nearly one-third of the remaining hours, plaintiff's counsel has exceeded, by roughly double, what I determine to be a reasonable amount of time. The excess hours billed in these four instances alone—almost 215—represent 15% of plaintiff's remaining request.[4] Additionally, the instances of overlapping and duplicative work suggest that many other tasks demanded more time of counsel than necessary. Mindful, however, that not every task could have been completed in less time, and further mindful of the excellent result, I have determined simply to reduce the remaining award by 15%.

## II. The Twelve Factor Test

Parallel to the lodestar method is the twelve factor test first listed in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975) and *Johnson v. Georgia Highway Express, Inc.*, 488

---

[4] The sum of the excess hours (114 hours for summary judgment, 50 hours for jury instructions, 25.5 hours for the pretrial order, and 25 hours for expert reports) totals 214.5 hours, or 15.1 % of the remaining 1417.54 hours. By "excess hours," I do not mean to suggest that, for example, twenty-five hours is the ideal amount of time for preparation of expert reports. The numbers quite possible could be trimmed further. I have tried to focus on what is unquestionably excessive.

F.2d 714, 717-19 (5th Cir. 1974). Like most twelve factor tests, it ends up being just a more cumbersome and complicated way of getting at the underlying question of reasonableness discussed above. Nor has counsel for defendant directly answered plaintiff's arguments about any of these twelve factors. But in the interest of thoroughness, each will be briefly discussed below.

### A.     *The Time and Labor Required*

The likely point of this factor is to reward cases where the time and effort involved were greater than normally required to prevail. This might be true, for example, where obtaining the necessary information was unusually difficult. In this case, as I have discussed, it was certainly necessary to put in a significant amount of effort. But nothing about the case made the time and labor an unusual factor favoring some enhanced award for plaintiff, and several indicators point to the fact that the legal team expended more time and labor than can reasonably be justified.

### B.     *The Novelty and Difficulty of the Questions Presented*

This case presented several issues where the law was not completely settled, and where the parties and the court clearly were wrestling with finding the right answer. This factor favors plaintiff.

### C.     *The Skill Requisite to Perform the Legal Service Properly*

Taken as a whole, this case required what one might term the "normal" amount of skill to perform the legal service properly. While there were some difficult legal issues, the case was otherwise a fairly quotidian piece of civil litigation. Counsel's performance was completely up to the task of handling this litigation, but nothing about the case presented an opportunity to display extraordinary skill.

### D.     *The Preclusion of Employment Due to Acceptance of the Case*

Counsel represents that this case, on behalf of a land owner, will make it more difficult to represent municipalities in the future. This assertion is unrebutted, and so I accept it. This factor favors plaintiff.

E.   *The Customary Fee*

Plaintiff asserts that the fee in this case is customary. As it is unrebutted, I accept the assertion so that this factor favors plaintiff.

F.   *Whether the Fee was Fixed or Contingent*

The fee here was fixed. The factor is designed to provide an enhancement to attorneys who have taken on difficult cases on a contingent basis. This factor cuts against plaintiff.

G.   *Time Limitations Imposed by the Client*

I agree with plaintiff's assertion that this factor is neutral.

H.   *The Amount Involved and the Results Obtained*

There is no question that the results obtained here are excellent, and that this factor weighs more heavily than other factors. This would counsel in favor of awarding the full amount of the fees reasonably expended. There is even some suggestion that an enhancement would be appropriate where the result is excellent. I have determined that no such enhancement is appropriate in this case, for the other reasons discussed, but I have attempted to reward the full amount of time reasonably expended without reducing the requested hourly rate.

I.   *The Experience, Reputation, and Ability of the Attorneys*

Plaintiff's legal team is comprised of attorneys of solid reputations, and certainly Mr. Willis has a great deal of experience handling this sort of litigation. The research and writing was clearly of the highest caliber. But not every case presents an opportunity to demonstrate

PAGE 10 - OPINION AND ORDER

greatness, so I mean no disparagement when I note that the trial ability displayed in this case was completely satisfactory for the job at hand without demonstrating excellence.

J.   *The Undesirability of the Case*

I assume this factor is designed to award attorneys who take on unpopular causes, and rightly so. Counsel suggests they may now be subject to retaliation in future matters in Crook County. This seems, at this point, to be pure speculation. I am unwilling, on that basis alone, to find this factor in plaintiff's favor.

K.   *The Nature and Length of the Professional Relationship with the Client*

I am at something of a loss to determine how one applies this factor to a fee request. Plaintiff's counsel notes this case was their first representation of plaintiff, but that it has since expanded to other matters. It appears, therefore, that this factor is neutral.

L.   *Awards in Similar Cases*

Plaintiff's counsel here suggests that the rates sought here are consistent with other awards. As far as that goes, I have granted counsel their requested rates. Nowhere does plaintiff suggest that the amount requested—over $600,000—is comparable to another award in a similar case. I assume I would have been directed to such a comparator if it existed. This factor cuts against the award here.

Taken as a whole, the twelve factor test leads the court to the same conclusion as the lodestar analysis. In summary, the result was excellent, the case was fairly typical, and the number of hours for which compensation is being sought were in excess of what is reasonable. I have therefore tried to determine a reasonable number of hours, taking into account the excellent result, and have multiplied that by the maximum rate sought by counsel.

PAGE 11 - OPINION AND ORDER

## CONCLUSION

For the reasons given above, I GRANT IN PART and DENY IN PART plaintiff's request for attorney fees. The overall request of $616,189 is reduced by (1) the fees sought between the end of the first pretrial conference and the start of the trial; (2) the fees sought for the *Cabler* litigation; and (3) a 15% reduction for excessive hours billed and overlapping, duplicative work. This results in a fee award in this case of $335,147.18, plus $7461.93 in nontaxable expenses.

I have also reviewed defendant's objections (#235) to plaintiff's bill of costs (#225). I find it appropriate, under the circumstances of this case, to allow costs for the *Cabler* transcript. Defendant's additional objections are denied and I find any costs billed during the interregnum to be de minimus. I GRANT plaintiff's costs in the amount of $14,102.24.

IT IS SO ORDERED.

DATED this   13th   day of October, 2009.

/s/ Michael W. Mosman
MICHAEL W. MOSMAN
United States District Judge